IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| KENNETH J. MYNATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et al | ) | Case No. 3:20-0151 |
| | ) | |
| Defendant | ) | Judge William Campbell, Jr. |
| | ) | |
| | ) | Magistrate Judge Holmes |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Comes now the Plaintiff, Kenneth J. Mynatt (hereinafter "Plaintiff"), by and through undersigned counsel, and in opposition to the Motion to Dismiss filed against him by the United States of America hereby submits this Response and Memorandum.

## I. INTRODUCTION AND BACKGROUND

Plaintiff initiated this action on February 21, 2020, pursuant to the Federal Tort Claims Act (hereinafter "FTCA") due to special agents of the Office of Labor Management Standards of the United States Department of Labor (hereinafter "OLMS") and special agents of the Treasury Inspector General for Tax Administration (hereinafter "TIGTA") conspiring with employees of the Internal Revenue Service (hereinafter "IRS") to provide false statements, documents, and misrepresentations to the District Attorney General in order to secure the Plaintiff's indictment. (Complaint ¶¶ 3; 6-10). The Defendants engaged in a concerted effort to have the Plaintiff

–1–

maliciously arrested and prosecuted. (Complaint ¶¶ 8-13). Moreover, the Defendants were part of a civil conspiracy to have the Plaintiff maliciously prosecuted to inflict as much financial, social and personal damage upon the Plaintiff as possible. (Complaint ¶¶ 195-197). Plaintiff seeks to have the United States held responsible for their above-mentioned actions of the special agents of OLMS and TIGTA. (Complaint; Counts 1-2).

Plaintiff, a resident of Rutherford County, Tennessee, is an employee of the Internal Revenue Service and held the elected position of Executive Vice President within NTEU39 (a union entity that represented employees of the IRS), which has its headquarters in Nashville, Tennessee. (Complaint ¶ 1; 9(a)). Over a period of months and years, Plaintiff was outspoken against NTEU leadership (both nationally and locally) over what he—and many others—saw as wasteful spending and unchecked power. (Complaint ¶¶ 10(a)(d)). Due to the Plaintiff's relentless pursuit to expose the corruption within NTEU leadership, the NTEU leadership (both nationally and locally) conspired to with IRS employees, and OLMS and TIGTA special agents to create a false narrative and forged documents to implicate the Plaintiff in an alleged embezzlement from the NTEU39. (Complaint ¶¶ 9(b)(e)). The Plaintiff was subsequently removed from the NTEU.

Following Plaintiff's removal from the NTEU and NTEU39, the Defendants pursued a criminal investigation of Plaintiff for the same alleged embezzlement of funds from the NTEU. (Complaint ¶¶ 9(c)(d)(e)). Although federal prosecutors rejected the case for prosecution and state-level prosecutors initially declined to prosecute the Plaintiff, Defendants were determined to use any means necessary to see that the Plaintiff was indicted. (Complaint ¶ 9(c)). Without contacting Plaintiff or his attorney, an indictment was obtained based on the false narrative. (Complaint ¶ 12). The Defendants presented false evidence, influenced witnesses, and misled state

officials to procure an indictment. (Complaint ¶¶ 9(b)(e)(f); 10-13). Nonetheless, Plaintiff vehemently maintained his innocence throughout the criminal process, and all charges were retired and later dismissed upon motion of the State of Tennessee. (Complaint ¶¶ 8; 10; 15).

## II. SUMMARY OF ARGUMENT

The Unites States, arguing on behalf of OLMS and TIGTA, has erroneously argued that the Plaintiff's complaint must be dismissed because (1) OLMS and TIGTA agents are not proper defendants for a malicious prosecution claim under the FTCA because they did not "prosecute" the Plaintiff; (2) that the Complaint fails to plausibly allege that OLMS and TIGTA agents knowingly provided false statements or misrepresentations to procure the indictment of the Plaintiff; (3) that the Complaint fails to plausibly allege that OLMS and TIGTA conspired with IRS employees to have the Plaintiff maliciously prosecuted; (4) that the government is immune from suit for malicious prosecution because OLMS agent Kemp is not an "investigative or law enforcement officer" pursuant to the FTCA; and (5) that OLMS agent Kemp's investigation and referral to prosecute the Plaintiff was a discretionary function.

First and most easily determined, the Complaint clearly contains sufficient facts, that when accepted as true, to allow a court to draw the reasonable inference that the defendant is liable for malicious prosecution and civil conspiracy. Moreover, the Complaint paints a clear picture that OLMS agents and TIGTA agents conspired with IRS employees to coordinate, plan, and present a false narrative based on false statements and misrepresentation to the District Attorney's office to procure the Plaintiff's indictment.

Second, the Government is not immune from suit for malicious prosecution because OLMS agent Kemp is an investigative or law enforcement officer under FTCA. The OLMS is tasked with

–3–

conducting both civil and criminal investigations of alleged violations of the Labor-Management Reporting and Disclosure Act and related laws. Clearly, Agent Kemp, although conspiring with the IRS employees to "frame" the Plaintiff, was conducting a fabricated criminal investigation of the Plaintiff. Therefore, this argument has no merit.

Lastly, Agent Kemp's fabricated investigation and referral to the ADA do not fall within the discretionary function exception because conspiring with IRS employees to "frame" an individual and subsequently present false statements and misrepresentations to the ADA in order to procure an indictment is not the type of conduct that the discretionary function exception is designed to shield.

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating sufficiency, the reviewing court assumes the truth of only the well-pled factual allegations but sets aside the complaint's legal conclusions and conclusory statements. *Iqbal,* 556 at 681. Evaluating the sufficiency of a pleading is a "context-specific task" that "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### IV. ARGUMENT

**A.  The Complaint Alleges Sufficient Facts For The Court To Draw A Reasonable Inference That The Defendants Knowingly Provided False Statements Or Misrepresentations To Procure the Plaintiff's Indictment**

–4–

The Defendants claim in their Motion to Dismiss that the Plaintiff's complaint only offers "conclusory statements" to suggest that the Defendants knowing provided false statements and misrepresentations to the ADA to procure the Plaintiff's Indictment. However, this is simply not true, the Plaintiff's complaint contains specific allegations that the Defendants' agents knowingly coordinated, planned, and presented a false narrative that was based on false statements and misrepresentations to the ADA to procure the Plaintiff's indictment.

It is well settled under Tennessee law, that "[o]ne who causes another's prosecution by false statements or misrepresentation" may be liable for malicious prosecution, even if "[they] do not file a complaint or actually procure the prosecution." *Trice v. McEachen*, 772 F. Supp. 2d 903 (M.D. Tenn. 2011) (citing *Davis v. Tenn. Wildlife Res. Agency*, No. W2005-00406-COA-R3CV, 2006 WL 861352 (Tenn. Ct. App. 2006)). At the pleading stage, a plaintiff must necessarily identify the "false statements and evidence" or "misleading omissions" that compromised the grand jury proceedings. *See Meeks v. Larsen*, 611 F. App'x 277, 282–83 (6th Cir. 2015) (malicious prosecution complaint that "makes no effort to identify" the "false and misleading information" has not "pled specific facts necessary" to survive motion to dismiss).

In this case, the Plaintiff's Complaint contains specific facts that reasonably infer that the Defendants knowingly provided the ADA with false statements and misrepresentation to procure the Plaintiff's indictment. Plaintiff points to the following from the Complaint that specifically references plausible facts showing that the Defendants' agents knowingly coordinated, planned, and presented a false narrative that was based on false statements and misrepresentations to the ADA to procure the Plaintiff's indictment:

–5–

(1) The events began in or about July 2011. IRS employees, David Krieg (hereinafter "KRIEG") and John Van Atta (hereinafter "VAN ATTA"), enlisted the assistance of OLMS and TIGTA special agents, to frame the PLAINTIFF for theft from NTEU39. Beginning in 2011, they conspired together to create a false narrative and subsequent politically motivated investigation which resulted in the PLAINTIFF's indictment by a state grand jury in March 2014. (Complaint ℙ 9(b)).

(2) Thereafter, the government's OLMS and TIGTA agents, along with employees of the IRS, while acting within the scope of their employment, maliciously and without probable cause recommended and urged the filing and prosecution of federal felony charges against PLAINTIFF for alleged "theft" of union funds and "theft of government services" by sending an e-mail using the IRS network in the course of his union duties. The Department of Justice declined the OLMS and TIGTA agents' requests because they determined the alleged crimes did not occur and were political in nature. (Complaint ℙ 9(c)).

(3) This action was accomplished by TIGTA agent MAYES who contacted the local district attorney's office and setup a meeting between he, KEMP, and Assistant District Attorney (ADA) Rob Mitchell (hereinafter "MITCHELL") and ADA Jim Milam (hereinafter "MILAM") with the District Attorney General for the 20th Judicial District of TN in early January 2014. (Complaint ℙ 9(d)).

(4) During the initial meeting, false testimony and forged documents previously generated by VAN ATTA and KEMP were presented to ADA MILAM and MITCHELL. At a second meeting not attended by MILAM, MAYES and KEMP admitted to MITCHELL

they were being pressured by their respective management structures to have the PLAINTIFF indicted regardless of the facts. MAYES and KEMP admitted to MITCHELL the charges were political in nature and not based on provable facts, but they insisted PLAINTIFF would have little or no representation and would likely plead guilty if MITCHELL assisted them in overcharging and indicting the PLAINTIFF. MITCHELL was in his first few months on the job had just passed the Bar exam and was eyeing a chance to impress his superiors with an indictment of an IRS agent. He initially declined MAYES and KEMP'S requests, but finally relented after considerable pressure he later described to PLAINITFF'S attorney as "they (MAYES/KEMP) just pushed so hard to get him (PLAINTIFF)". MITCHELL finally relented and agreed to assist KEMP and MAYES in their desire to have PLAINTIFF indicted as long as either KEMP or MAYES agreed to be listed on the indictment as the "prosecutor". On March 14, 2014, MITCHELL allowed KEMP, who had the blessing of his OLMS managers UNDERWOOD and NEEL, to testify before a state grand jury and successfully had PLAINTIFF indicted for two state felonies. As previously agreed between the conspirators, KEMP signed the indictment as the prosecutor. The subsequent arrest of PLAINTIFF was the result of a grand jury indictment obtained by KEMP by knowingly using false testimony and altered documents. (Complaint ⁋ 9(d)).

(5) Before, and after the arrest, the government's special agents falsely accused PLAINTIFF of theft and misuse of a credit/debit card; and failed to provide full

discovery from April 2014 until the charges were dismissed and denied the PLAINTIFF his right to view any and all evidence against him. (Complaint ⁋ 9(g)).

(6) After the arrest, the government's agent, realizing allowing full discovery to the PLAINTIFF would reveal the lack of probable cause for an indictment and the malicious intent of the prosecution, asked ADA MILAM to drop all charges against PLAINTIFF if he agreed to resign his position with the Federal government. The PLAINTIFF refused repeatedly based on the fact he was innocent. Upon knowledge and belief, during this time period the government's agents were in frequent contact with IRS, OLMS, and TIGTA executives directing the political prosecution of PLAINTIFF or using KEMP and MAYES as their intermediaries. (Complaint ⁋ 9(g)).

(7) In July 2011, VAN ATTA and KRIEG, through contacts by phone and evidenced by e-mails received from a FOIA request, requested investigations be started on PLAINTIFF. VAN ATTA contacted OLMS and reported PLAINTIFF had stolen union funds, while KRIEG simultaneously contacted upper management in TIGTA to begin investigations on PLAINTIFF for sending an e-mail he believed was in violation of the NTEU-IRS bargaining contract and theft of union funds. The government's agents including KEMP representing OLMS and Gary Mappin representing TIGTA and later MAYES assisted VAN ATTA in reconstructing the local union's books and records beginning in September 2011 and continuing through at least March 2014, in order to support a pre-determined goal of framing the PLAINTIFF for theft. Despite the fact, the books and records were prepared solely by VAN ATTA contemporaneously when the transactions had occurred, had previously been approved as substantially correct by

–8–

a CPA, and certified as correct under penalties of perjury by VAN ATTA, KEMP and VAN ATTA conspired to concoct a false narrative based on fraudulent documents, statements, and less than adequate investigative methods. (Complaint ¶ 10(e)).

(8) OLMS agent Sonya Ewing was originally assigned the investigation of the PLAINTIFF and held the initial interview of VAN ATTA on September 14, 2011. Just a few months later, the case was reassigned to agent KEMP who re-interviewed VAN ATTA on March 6, 2012. In this interview, KEMP omits the fact VAN ATTA had regularly issued statements to the PLAINTIFF which reflected the he and PLAINTIFF were communicating fully on disbursements for the local union. KEMP states "VAN ATTA cannot explain why he chose to give PLAINTIFF credit for some of the purchases PLAINTIFF made." KEMP wrote that VAN ATTA repeatedly over the course of two years told PLAINTIFF not to use the chapter's debit card, yet there is not one written document nor e-mail documenting these alleged warnings. (Complaint ¶ 10(h)).

By submitting its Motion to Dismiss, the Defendants have agreed to accept the factual allegations set forth above as true. Further, despite the Defendants contention that the Complaint contains "no facts suggesting the OLMS or TIGTA agents actually knew or had any basis for knowing that any information they provided was untrue or mischaracterized" and that it only provides "conclusory allegations", the Complaint specifically alleges that the Defendants' agents conspired with IRS employees to create a false narrative based on false statements and misrepresentations that they then presented to the ADA. (Complaint ¶¶ 9; 10). Moreover, the Complaint details specific information that was revealed pursuant to the Plaintiff's FOIA request. (Complaint ¶ 10(e)). Likewise, the Complaint alleges specific facts regarding the meetings

–9–

between the Defendants' agents and the ADA, including the agreement that was reached to allow Agent Kemp to be listed as "prosecutor" on the indictment and be the sole witness to testify to the grand jury.[1] (Complaint ¶ 10(e)).  Furthermore, the Complaint provides specific facts regarding how the Defendants' agents orchestrated and controlled the Plaintiff's criminal case by withholding discovery and suggesting plea bargains to the ADA.

Given the forgoing, the Plaintiff has sufficiently pled specific facts that the Defendants' agents knowingly provided false statements and misrepresentations to the ADA to procure the Plaintiff's indictment.

**B.     The Complaint Alleges Sufficient Facts For The Court To Draw A Reasonable Inference That The Defendants Conspired with IRS Employees To Maliciously Prosecute the Plaintiff**

The Defendants assert in their Motion to Dismiss that the Plaintiff has failed to sufficiently plead a cause of action for civil conspiracy and that the Plaintiff's Complaint fails to allege plausible facts to support a civil conspiracy.  However, as detailed in the forgoing, the Plaintiff's Complaint alleges several specific allegations that would allow a Court to reasonably infer that the Defendants' agents conspired with IRS employees to maliciously prosecute the Plaintiff.

Under Tennessee law, a civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Kirksey v. Overton Pub, Inc.,* 739 S.W.2d 230, 236 (Tenn. App. 1987) (quoting *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 347 (1948)). The requisite elements of the cause of action are common design, concert of action, and an overt

---

[1] According to the indictment, Agent Kemp was the only witness that testified to the grand jury.

—10—

act. *Braswell v. Carothers,* 863 S.W.2d 722, 727 (Tenn. App. 1993); *Koehler v. Cummings,* 380 F. Supp. 1294, 1313 (M.D. Tenn. 1974). Injury to person or property, resulting in attendant damage, must also exist. *Braswell,* 863 S.W.2d at 727.

The Complaint, when taken as true, alleges plausible facts that the Defendants' agents shared a common design to have the Plaintiff maliciously prosecuted and they worked together to coordinate, plan, and present a false narrative that was based on false statements and misrepresentations to the ADA to procure the Plaintiff's indictment. (Complaint ¶¶ 9; 10). The Complaint details the meetings that occurred between the Defendants' agents and the IRS employees, emails that were exchanged between the two, and their conspiracy to have the Plaintiff maliciously prosecuted for political purposes. Moreover, the Plaintiff alleges that as a result of the Defendants' agents conspiring with IRS employees to have him maliciously prosecuted he has suffered emotional distress and humiliation of being charged with two felonies, the fear of long term imprisonment, [having] to sell his house in order to fund his legal costs, and his wife divorcing him. (Complaint ¶¶ 15; 16).

Therefore, Plaintiff has sufficiently pled specific facts that the Defendants' agents conspired with IRS employees to have the Plaintiff maliciously prosecuted.

**C.    OLMS Agent Kemp and TIGTA Agent Mayes Are Investigative or Law Enforcement Officers Under FTCA**

OLMS Agent Kemp is an investigative or law enforcement officer under FTCA because he has the authority to execute searches. Additionally, TIGTA Agent Mayes is an investigative or law enforcement officer under the FTCA and was actively engaged and participated in the malicious prosecution of the Plaintiff.

–11–

First, the Defendants assert that OLMS Agent Kemp is not an investigative or law enforcement officer under the FTCA because OLMS agents are not empowered to execute searches, seize evidence, or make arrests.  However, contrary to the Defendants' assertions, one of OLMS' primary responsibilities are to "conduct both *civil and criminal investigations* of alleged violations of the Labor-Management Reporting and Disclosure Act ("LMRDA") and related laws." Department of Labor-OLMS, https://www.dol.gov/agencies/olms/enforcement (last visited Oct. 4, 2020) (emphasis added).  Moreover, when conducting investigations into alleged violations of the LMRDA, OLMS agents have the authority to "enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto".  29 U.S.C. § 521 (a).  Additionally, OLMS agents carry a badge and have subpoena power to compel the attendance of witnesses and production of documents.  *Id*.  It is clear from OLMS' stated primary responsibility and the statutory authority that allows them to "enter such places and inspect such records" that they are investigative or law enforcement officers under the FTCA.

Second, the Defendants seemingly admit that TIGTA Agent Mayes is an investigative or law enforcement officer under the FTCA, but contend that because TIGTA Agent Mayes did not actually testify before the grand jury that the Government cannot not be held liable for his conduct under the FTCA.  The Complaint describes in great detail the actions that Agent Mayes took to have the Plaintiff maliciously prosecuted.   (Complaint ¶¶ 9; 10).  Therefore, the Plaintiff submits that the Government is subject to liability for TIGTA Agent Mayes' actions under the FTCA.

Given the forgoing, OLMS Agent Kemp and TIGTA Agent Mayes are "investigative or law enforcement officers" under the FTCA and they both knowingly coordinated, planned, and

–12–

presented a false narrative that was based on false statements and misrepresentations to procure the Plaintiff's indictment.

### D. OLMS Agent Kemp's Investigation And Referral To The ADA Do Not Fall Within The Discretionary Function Exception

The liability of the United States under the FTCA is subject to the various exceptions contained in § 2680, including the "discretionary function" exception. *United States v. Gaubert*, 499 U.S. 315 (1991). The discretionary function exception provides that the United States is not liable for

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U. S. C. § 2680(a). In order to determine if the discretionary function exception to applies, the court must determine (1) whether there is an element of judgment or choice involved with the official's duty and (2) that judgment or choice is the kind that discretionary function exception was designed to shield. *Gaubert*, 499 U.S. at 322. The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had not rightful option but to adhere to the directive.'" *Milligan v. United States*, No. 3:07-1053, 2009 Lexis 80846 at *28-29 (M.D. Tenn. Sept. 4, 2009) (quoting *Rosebush v. United States*, 119 F.3d at 431). If, however, the challenged conduct is discretionary, the second part of the test requires a court to determine "whether the conduct is 'of the kind that the

–13–

discretionary function exception was designed to shield.'" *Id*. In the case at bar, the discretionary function exception clearly does not apply to the Defendants' conduct.

Both Agent Kemp and Agent Mayes were acting within the scope of their employment when they conspired with IRS employees to have the Plaintiff maliciously prosecuted. They knowingly coordinated, planned, and presented a false narrative that the Plaintiff embezzled union funds and unlawfully used a union credit card. Next, the Agents knowingly took the false information to the U.S. Attorney's Office to have the Plaintiff indicted with federal charges but were denied because of lack of evidence. Finally, in a last-ditch effort to have the Plaintiff indicted, the Agents knowingly presented the false information to the ADA in Davidson County and procured the Plaintiff's indictment. Clearly, this is not the type of conduct that the discretionary function exception was designed to shield.

## V. CONCLUSION

The Court, accepting as true all factual allegations in the Complaint and construing them in the light most favorable to the Plaintiff, must find that the Plaintiff has proffered sufficient facts to allow the opportunity to conduct discovery and further explore the legitimate claims brought against the Defendants in this cause. Accordingly, this Court should deny the Defendants' Motion to Dismiss.

MCCARTER | EAST PLLC

/s/ Brock East_____
**BROCK EAST, BPR #24406**
brockeast@mcelaw.com
Attorney for Kenneth J. Mynatt
316 W. Main Street
Murfreesboro, TN 37130
T: (615) 893-9255
F: (615) 893-9258

## CERTIFICATE OF SERVICE

The undersigned herby certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to:

Michael Roden
Assistant United States Attorney
110 Ninth Avenue South, Suite A-961
Nashville, TN 37203

/s/ Brock East_____
BROCK EAST

–15–

Case 3:20-cv-00151   Document 29   Filed 10/09/20   Page 15 of 15 PageID #: 117