# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KENNETH J. MYNATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:20-cv-00151** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **UNITED STATES OF AMERICA, et al.,** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss. (Doc. No. 19). Plaintiff filed a Response (Doc. No. 29), and Defendants filed a Reply (Doc. No. 31). For the reasons stated herein, the motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kenneth Mynatt, an IRS employee and the former vice president of Chapter 39 of the National Treasury Employees Union ("NTEU"), brings this action against Defendants for malicious prosecution and civil conspiracy under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*  Plaintiff alleges that beginning in or about July 2011, certain IRS employees conspired with agents of the Office of Labor Management Standards of the United States ("OLMS"), and the Treasury Inspector General for Tax Administration ("TIGTA") to frame Plaintiff for theft of funds. (Doc. No. 1, ¶¶ 6, 8, PageID# 2, 3).[1] Plaintiff alleges that the conspirators initiated an investigation of his conduct while he was employed with the Union, and, as a result of that investigation pressured the District Attorney to prosecute him. (*Id.*). Plaintiff's Complaint outlines a complex

---

[1]     Several paragraphs in Plaintiff's Complaint are misnumbered. For clarity, the Court cites the PageID where necessary.

narrative of Defendants' actions and motivations, as well as those of IRS agents, Union officials, and the District Attorney, who are not parties to this lawsuit. He alleges that these parties collaborated to retaliate against him for his outspoken criticism of NTEU leadership. (*Id*. ¶10, Page ID# 6-12).

In March 2014, Plaintiff was indicted in the Twentieth Judicial District for theft of funds. (Doc. No. 21). The charges were eventually retired and dismissed. (Doc. No. 1 ¶ 15). Plaintiff alleges that he was prosecuted solely because of the pressure put on the District Attorney by OLMS and TIGTA agents acting in concert with members of the IRS and that these conspirators possessed evidence of his actual innocence which was never produced in discovery. (*Id*. ¶ 12).

In 2017, Plaintiff filed suit against the NTAU, the United States, and 12 named Union, OLMS, and TIGTA agents. District Judge Richardson dismissed Plaintiff's federal claims with prejudice and his state court claims without prejudice, finding that Plaintiff was required to bring those claims under the Federal Tort Claims Act. (*See Mynatt v. Nat'l Treasury Employees Union Chapter 39*, No. 3:17-cv-01454, 2019 WL 7454711 (M.D. Tenn. June 19, 2019).

Plaintiff filed the instant action in 2020 naming only the United States, OLMS, and TIGTA, but alleging the same conduct by the same actors. Plaintiff states in his complaint that he has complied with the statutory requirement to exhaust his administrative remedies (Doc. No. 1 ¶ 5), and Defendants do not dispute that the requirement has been satisfied. Defendants now move to dismiss this action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). When a motion to dismiss raises both lack of subject matter jurisdiction and failure to state a claim, the Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Wayside Church v. Van Buren Cty*., 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990)).

A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc*., 410 F.3d 879, 881 (6th Cir. 2005).  A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church*, 847 F.3d at 816-17 (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id*. at 817 (quoting *Gentek*, 491 F.3d at 330).  "When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction…the district court has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject matter

3

jurisdiction exists." *Adkisson v. Jacobs Engineering Group, Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). A question of sovereign immunity is generally a factual attack. *See Hatcher v. United States*, 855 F.Supp.2d 728, 731 (E.D. Tenn. Mar. 31, 2012) (finding that a challenge to subject matter jurisdiction under the FTCA was a factual attack); *Banks v. United States*, 2009 WL 805143 at *4 (N.D. Ohio Mar. 27, 2009) ("The sovereign immunity question under Rule 12(b)(1) is not whether the complaint adequately sets forth a substantive claim…but whether the Court has jurisdiction to hear the causes of action the claim asserts.").

### III.    ANALYSIS

The Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity, permitting a plaintiff to bring state-law tort claims against the United States "in the same manner and to the same extent as a private individual under like circumstances" where the claim arises from the conduct of a federal employee acting within the scope of their employment. 28 U.S.C. § 2674; *Brownback v. King*, 141 S. Ct. 740, 746, 209 L. Ed. 2d 33 (2021). The liability under the FTCA is determined by the laws of the state in which the conduct giving rise to liability occurred. *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). Certain claims, however, are excepted from the FTCA, and where one of these exceptions applies, the Court lacks subject matter jurisdiction.

### A.    Exceptions to the FTCA

Defendants raise two exceptions to the FTCA: the discretionary function exception and the intentional tort exception. The discretionary function exception preserves the United States' sovereign immunity for claims based on the performance of or failure to perform a discretionary function. 28 U.S.C. § 2680(a).  The intentional tort exception preserves the United States' sovereign immunity for certain intentional torts, including malicious prosecution, unless the

4

allegations are against an "investigative or law enforcement officer of the United States Government." 28 U.S.C. § 2680(h). This law enforcement proviso operates as a carve out of the exception, permitting intentional tort claims when they are committed by "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law." *Id*. Defendants argue that both exceptions apply, divesting the Court of subject matter jurisdiction. Plaintiff argues that the discretionary function exception does not apply, and that his claims fall within the law enforcement proviso.

The Circuits are divided on how a court should proceed when both exceptions are raised, because the consideration of the discretionary function exception and the law enforcement proviso of the intentional tort exception may yield different results. The Fifth and Eleventh Circuits have found that any conflict between the discretionary function exception and the law enforcement proviso of the intentional tort exception should be resolved in favor of the law enforcement proviso. *See Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987) (Finding that declaring the government immune from a suit permissible under the law enforcement proviso due to the discretionary function exception "would result in judicial repeal of the law enforcement proviso by rendering its authorization of suits for malicious prosecution, which frequently arise out of, or in connection with discretionary acts, superfluous.")[2]; *Nguyen v. United States*, 556 F.3d 1244, 1256-57 (11th Cir. 2009) ("To hold in this case that the discretionary function exception in subsection (a) trumps the specific proviso in subsection (h) would defeat what we know to be the clear purpose of the 1974 amendment.").

---

[2] A more recent decision in the Fifth Circuit does not alter the finding in *Sutton* but does seem to find that it is sometimes appropriate to consider both exceptions independently. *See Campos v. United States*, 888 F.3d 724 (5th Cir. 2018).

Conversely, decisions out of the Second, Fourth, Seventh, and Ninth Circuits have found that the plaintiff must first overcome the discretionary function exception before the court can consider the intentional tort exception. *See Caban v. United States*, 671 F.2d 1230, 1234-35 (2nd Cir. 1982) (finding that the intentional tort exception must be read in conjunction with the discretionary function exception.); *Medina v. United States*, 259 F.3d 220, 224-26 (4th Cir. 2001) (finding that Plaintiff must first overcome the discretionary function determination before the Court considers the intentional tort exception); *Linder v. United States*, 937 F.3d 1087, 1089 (7th Cir. 2019) (finding that Plaintiff's claims for malicious prosecution and intentional infliction of emotional distress were within the discretionary function exception); *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994) ("If a defendant can show that the tortious conduct involved a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort.").

Absent clear guidance from the Sixth Circuit on this issue, the Court finds the latter body of law more persuasive. The Court is additionally guided by the language of the intentional tort exception, which states that the exception applies "provided, that…*the provisions of this chapter* and section 1346(b) of this title *shall apply* to any claim arising out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h) (emphasis added). The statutory language contemplates the interplay between the listed exceptions and instructs that all provisions be considered. Subsection (a) is a "provision[] of [the] chapter" which the Court "shall apply to any claim arising out of" the enumerated intentional torts. Accordingly, the Court finds that it must evaluate the discretionary function exception as applied to Plaintiff's FTCA claim, even when that claim alleges an intentional tort that may fall within the law enforcement proviso.

6

**B.     The Discretionary Function Exception**

As stated above, the discretionary function exception, articulated in subsection (a), "preserves the government's sovereign immunity for any claim 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Wilburn v. United States*, 745 Fed. Appx. 578 (6th Cir. 2018) (quoting 28 U.S.C. § 2680(a)). "This exception…marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (internal quotations omitted).

In determining the applicability of the discretionary function exception, the relevant inquiry is "the nature of the conduct, rather than the status of the actor". *Id*. The Court must only apply the exception when the conduct is discretionary. *Id*. Accordingly, courts have upheld a two-part test for determining the applicability of this exception, commonly called the *Gaubert* test. "First, the conduct must be 'discretionary,' not controlled by mandatory statutes and regulations.'" *A.O. Smith Corp. v. United States*, 774 F.3d 359, 364 (6th Cir. 2014) (quoting *United States v. Gaubert*, 499 U.S. 315, 328 (1998)). Second, the Court must find that "the exercise of discretion must be 'the kind that the discretionary function exception was designed to shield'." *Id*. "The crucial first step in deciding whether the conduct was discretionary 'is to determine exactly what conduct is at issue.'" *Milligan v. United States*, 670 F.3d 686, 693 (6th Cir. 2012) (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)).

Plaintiff frames his complaint as a complex conspiracy involving members of the IRS in consort with agents of OLMS and TIGTA. Despite that presentation, the challenged conduct at the

heart of Plaintiff's complaint is the investigation undertaken by OLMS and TIGTA agents and their recommendations to the District Attorney. Plaintiff states that he was maliciously prosecuted "at the suggestion and instigation of special agents of the [OLMS] and special agents of [TIGTA]." (Doc. No. 1 ¶6). He alleges that the parties "conspired together to create a false narrative and subsequent politically motivated investigation which resulted in [Plaintiff's] indictment." (*Id*. ¶9 PageID# 4). He identifies OLMS Agent Kemp's "less than adequate investigative methods" and argues that TIGTA Agent Kreig used his investigation as "a fishing expedition in order to hopefully find incriminating evidence." (*Id*. ¶ 10, PageID# 10). Plaintiff's claims against the agents are based in their investigations and recommendations. Accordingly, the Court must determine whether the investigations and recommendations of the respective agents are discretionary functions. *See Kohl v. United States*, 699 F.3d 935, 941-41 (6th Cir. 2012) (collecting cases demonstrating the characterization of claims under the FTCA).

     1. OLMS Agents

     OLMS agents are empowered by statute with the authority necessary to enforce the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq*. The statute gives the Secretary and his delegates the authority to investigate when they believe a violation has taken place or will take place, and to report the results of that investigation to "interested parties." 29 U.S.C. §521(a). Applying the two-step *Gaubert* test for determining whether the discretionary function exception applies, the Court finds that it does.

     First, the Court considers whether the challenged acts were discretionary or controlled by mandatory statutes and regulations. The language of the statute is permissive, not mandatory. The statute leaves to the discretion of the Secretary when and to what extent to conduct an investigation. The decision to report the findings of such investigation is also left to the discretion of the

Secretary. Notwithstanding the permissive language of the statute, "[c]ourts are generally in agreement that determinations of when, whether, and how to investigate or prosecute are discretionary functions because they result from balancing policies of enforcement and future compliance." *Miller v. United States*, 2013 WL 1187914 at *3 (E.D. Tenn. 2013) (collecting cases); *Palm v. United States*, 2007 WL 9254426 at *2 (6th Cir. 2007). Accordingly, the Court finds that the acts of the OLMS agents in this case were discretionary.

Next, the Court considers whether the conduct is of the kind which the exception is designed to protect. "This second prong seeks to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Milligan v. United States*, 670 F.3d at 693 (internal quotations omitted). There is a "strong presumption" that this second element is satisfied when the court concludes that the first step of the analysis has been met. *A.O. Smith Corp*. 774 F.3d at 365. The Court in *Gaubert* instructs that "[t]he actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statutes and regulations are protected." *Gaubert,* 499 U.S. at 323. Here, the OLMS agent's investigative powers and decisions are grounded in the goals of upholding and enforcing LMRDA. The Court finds that this is the type of function that the exception is designed to shield.

Accordingly, the discretionary function exception applies, and the Court lacks subject matter jurisdiction over Plaintiff's FTCA claims against OLMS.

2. TIGTA Agents

In arguing the application of the discretionary function, Defendants only discuss application to OLMS, stating that "[t]here is not any cognizable assertion that TIGTA agents engaged in these acts." (Doc. No. 22 at 20). Despite Defendants' offhand dismissal of TIGTA

agents' part in this action, the Court will consider the applicability of the discretionary function to all parties. *See Answers in Genesis of Kentucky, Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, (6th Cir. 2009) (Stating that "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.").

The Inspector General Act of 1978, 5 U.S.C. App. 3 §1, *et seq*., empowers officers of TIGTA with certain statutory authority necessary to carry out the provisions of the Act. Relevant to this case, TIGTA agents have the authority "to make such investigations and reports relating to the administration of the programs and operations of that applicable establishment as are, in the judgments of the Inspector General, necessary or desirable." 5 U.S.C. App. 3 §6. The statute does not prescribe a mandatory course of conduct for these investigations or reports, but rather vests decision-making authority in the Inspector General. These decisions include establishing internal policies which are subject to review and audit. 5 U.S.C. App. 3 §4.

Applying the *Gaubert* test, the Court finds that the discretionary function exception also applies to TIGTA agents in this case. First, for the same reasons stated above, the Court finds the investigatory and reporting functions to be discretionary, as there is no mandatory course of conduct which has been alleged to be followed or violated. Again, the Court notes that investigative functions are generally found to be discretionary. *Miller v. United States*, 2013 WL 1187914 at *3 (E.D. Tenn. 2013).

Next the Court considers whether the investigatory and reporting conduct here is of the kind the exception seeks to protect. For the same reasons stated above, the Court finds that it is. *Gaubert* 499 U.S. at 323. Like OLMS agents, TIGTA agents' investigative functions are grounded in the considerations and goals of the statute. Further, the language of the statute shows that the

10

conduct of the Inspector General and his agents is subject to review and audit, meaning that the challenged conduct is "susceptible to policy analysis." *Gaubert*. 499 U.S. at 325

Accordingly, the Court finds that discretionary function exception also applies to Plaintiff's claims against the TIGTA agents, and the Court lacks subject matter jurisdiction over those claims.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims against OLMS and TIGTA. Accordingly, Defendant's Motion to Dismiss will be **GRANTED**, and this case will be **DISMISSED** without prejudice.

An appropriate order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

11